

**SIGNED this 27th day of March, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-10381-CAG |
| | § | |
| BOULDER CROSSROADS, LLC, | § | CHAPTER 7 |
| Debtor. | § | |

| | | |
|---|---|---|
| BOULDER CROSSROADS, LLC | § | |
| and PREFERRED RETAIL STORE | § | |
| DEVELOPERS, LLC, | § | |
| Plaintiffs, | § | |
| | § | ADV. NO. 09-01157-CAG |
| v. | § | |
| | § | |
| NADEL NEVADA, INC., f/k/a | § | |
| NADEL ARCHITECTS NEVADA, | § | |
| LLP, MARK MIKELSON, EKN | § | |
| ENGINEERING, INC., and EBBIE K | § | |
| NAKHJAVANI, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER REGARDING
PARTIES' COMPETING MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Came on to be considered the above-styled and numbered adversary proceeding and, in

particular, Plaintiffs' Motion for Partial Summary Judgment (docket no. 144) filed December 27,

2011, on behalf of Plaintiffs Boulder Crossroads, LLC ("Boulder") and Preferred Retail Store Developers, LLC ("Preferred") (collectively, "Plaintiffs"), and Defendants' Motion for Partial Summary Judgment (docket no. 149) filed January 3, 2012, on behalf of Defendants Nadel Nevada, Inc. ("Nadel") and Mark Mikelson (collectively, "Defendants"). This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. All causes of action alleged herein are core proceedings pursuant to, *inter alia*, 28 U.S.C. §§ 157(b)(2)(A), (B), and (K) or are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1334(b) as they arose in or are related to the instant bankruptcy case. This matter is referred to this Court under the district court's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

On May 21, 2010, Plaintiffs jointly filed their Amended Complaint (docket no. 49). On October 14, 2010, Defendants filed their Answer to the Amended Complaint and Affirmative Defenses (docket no. 98). On December 27, 2011, Plaintiffs filed their Motion for Partial Summary Judgment (docket no. 144). On January 3, 2012, Defendants filed their own Motion for Partial Summary Judgment and Brief in Support Thereof together with their Response to Plaintiffs' Motion for Partial Summary Judgment (docket nos. 149, 150). On January 16, 2012, Plaintiffs filed their Response to Defendants' Motion (docket no. 156). On February 8, 2012, after hearing the arguments of counsel, the Court took this matter under advisement. Having considered the arguments presented and the applicable law, for the reasons stated below the Court finds that Plaintiffs' Motion for Partial Summary Judgment should be DENIED and that Defendants' Motion for Partial Summary Judgment should be GRANTED IN PART and DENIED IN PART.

**FACTUAL BACKGROUND**

Plaintiff, Boulder, is a Nevada limited liability company (docket no. 49, at 2). Preferred, the parent of Boulder, is a Texas limited liability company (*id.* at 3). Preferred created Boulder for the purpose of purchasing land to build and operate a shopping center in an "unincorporated area" of Las Vegas, Nevada (*id.* at 2–3). Defendant, Nadel, is a California corporation and the successor-in-interest to Nadel Architects, LLP, a Nevada limited liability partnership (docket no. 39, at 1). Preferred hired Nadel to provide architectural services on the shopping center project (docket no. 49, at 3). Defendant, Mark Mikelson, is the Senior Vice President and Managing Director of Nadel (*id.*).

Nadel sent Preferred a proposed agreement for architectural services dated November 21, 2005 ("First Letter Agreement") (docket nos. 144, at 4; 149, at 7). The parties agree that this First Letter Agreement included an attached document titled "April 2001 Terms and Conditions" ("Terms and Conditions") (docket nos. 144, at 4; 149, at 17). The Terms and Conditions contain a clause limiting Nadel's liability in the event of litigation to the amount of fees invoiced for services provided (docket no. 150-1, at 7 cl. 9). Eric Rosenberg, manager of Preferred (docket no. 144-1, at 1), made handwritten notes on both the First Letter Agreement and the Terms and Conditions, signed the Agreement, initialed the Terms and Conditions, and returned the documents to Nadel (docket nos. 144, at 4; 144-2, at 5–6).

Nadel sent Preferred a revised agreement dated January 24, 2006 ("Second Letter Agreement")[1] that Rosenberg signed on behalf of Preferred (*id.*; docket no. 150, at 3–4). According to the parties' representations to the Court at the hearing on February 8, 2012, the parties agreed in mediation that the Second Letter Agreement is the only agreement considered

---

[1] The date printed on the Second Letter Agreement is January 24, 2005, but the parties agree that this was a mistake and that the correct year for the agreement is 2006 (docket nos. 144, at 4 n.3; 150, at 3 n.1).

binding for the purposes of the Motions for Partial Summary Judgment. In this Second Letter Agreement, Nadel states "we are hereby submitting our proposal for Architectural Services for the entitlement phase and the contract document phase" (docket no. 150-2, at 1). The Agreement then lists "on-site work," "Feasbility/Design Studies" (numbered "Task 000"), "Entitlement Exhibits" (numbered "Task 001"), and "Optional Design Services" (*id*. at 1–3). The next paragraph states:

> At such time that we are authorized to proceed beyond the entitlement phase, we shall prepare a contract for basic services conforming to our standard Owner Architect Agreement with mutually agreed upon lump of sum fee amounts as indicated below. Our scope of work shall generally consist of the following services.

(*Id*.) The agreement then describes "Basic Contract Services," which include tasks numbered 100–500 (*id*. at 3–4). The final paragraph of the agreement states, "Terms and Conditions dated April 2001, (see attached) are hereby incorporated into and made part of this Work Authorization." (Docket no. 144-3, at 6). Plaintiffs deny that any Terms and Conditions document was attached to the Second Letter Agreement (docket no. 144, at 5). Defendants maintain that the same Terms and Conditions that were attached to the First Letter Agreement were attached to the Second Letter Agreement, including the handwritten notes and initials added by Rosenberg (docket nos. 149-1, at 7; 149-3; 150, at 7).

A third agreement, titled "Standard Form of Agreement Between Owner and Nadel Architects Nevada LLP" ("Standard Form Agreement"), dated June 28, 2006, and signed only by Mikelson on behalf of Nadel and not by Plaintiffs, contains its own detailed terms and conditions as well as descriptions of the "tasks" and pricing, similar to the prior Letter Agreements (docket no. 144-4). According to the parties' representations to the Court at the hearing on February 8, 2012, while the parties agreed in mediation that the Second Letter Agreement is the only binding

agreement for the purpose of deciding the competing Motions, they also agree that the existence of the Standard Form Agreement is relevant to the parties' arguments.

**PROCEDURAL BACKGROUND**

On February 17, 2009, Boulder filed a voluntary case under Chapter 11 of the Bankruptcy Code, later converted to a Chapter 7 case on January 12, 2012 (case no. 09-10381). On May 21, 2010, Plaintiffs filed their First Amended Complaint alleging thirteen causes of action (docket no. 49).[2] Plaintiffs allege that Nadel's designs contained flaws that led to unnecessary expenses, including that the designs failed to comply with the Clark County, Americans with Disabilities Act, and U.S. Postal Service requirements (*id.* at 10–11). Plaintiffs request damages of over $2.5 million as a result of Nadel's alleged conduct (*id.* at 10–12). On October 10, 2010, Defendants filed their Original Answer and Affirmative Defenses in Response to Plaintiffs' First Amended Complaint and Nadel Nevada, Inc.'s Counter-Claim Against Preferred Retail Store Developers, LLC (docket no. 98). In their Answer, Defendants raise the affirmative defense that Plaintiffs' claims are contractually limited to the fees invoiced by Nadel "in accordance with the limitation of liability clause negotiated and agreed upon by the parties." (*Id.* at 16).

On December 27, 2011, Plaintiffs filed a Motion for Partial Summary Judgment requesting a finding that the limitation of liability clause alleged by Nadel is not enforceable as a matter of law (docket no. 144, at 2). On January 3, 2012, Defendants filed their own Motion for Partial Summary Judgment and Brief in Support Thereof and Response to Plaintiffs' Motion for

---

[2] The causes of action in the Amended Complaint are: 1) Objection to Nadel's Proof of Claim; 2) Interference with Prospective Business Advantage; 3) Breach of Contract; 4) Contractual Breach of Faith of the Implied Covenant of Fair Dealing; 5) Unjust Enrichment; 6) Negligence; 7) Negligent Misrepresentation; 8) Intentional Misrepresentation-in the alternative; 9) Fraud-in the alternative; 10) Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing; 11) Nondisclosure; [the Amended Complaint contains no cause numbered 12]; 13) Fraudulent Concealment; and 14) Claims and Causes of Action Against EKN/EN and Nadel Regarding Mechanics' and Materialment's [sic] Liens (docket no. 49, at 12–25). Plaintiffs later withdrew the Fraud and Fraudulent Concealment claims (docket no. 95, at 2).

5

Summary Judgment, requesting a finding that the limitation of liability is enforceable and that the amount of damages is, therefore, capped at the fees invoiced as a matter of law (docket nos. 149, 150). On January 16, 2012, Plaintiffs filed their Response to Defendants' Motion for Partial Summary Judgment (docket no. 156), arguing that even if there is an enforceable limitation of liability clause, its applicability is limited to a small part of the work performed by Nadel (*id.* at 12).

## PARTIES' CONTENTIONS IN THEIR MOTIONS AND BRIEFS

In their Motion for Partial Summary Judgment, Plaintiffs initially present four arguments as to why the limitation of liability clause is not enforceable: 1) the Terms and Conditions, which contained the clause, were not attached to the Second Letter Agreement; 2) the clause conflicts with a later-issued Agreement; 3) the clause "is in the nature of a penalty" unenforceable under Nevada law; and 4) it would be unconscionable to enforce the clause because it was "inconspicuously included within . . . other boilerplate terms." (Docket no. 144, at 3).[3]

In their competing Motion for Partial Summary Judgment, Defendants assert that the limitation of liability clause is binding as a matter of law and limits Plaintiffs' damages to the amount invoiced by Nadel (docket no. 149, at 2). Defendants maintain that they attached the Terms and Conditions to the Second Letter Agreement sent to Preferred, but argue that regardless of receipt, the Plaintiffs are bound as a matter of law because the Terms and Conditions were "expressly incorporated" into the Second Letter Agreement (*id.* at 7–8, 9–10).

In their Response, Plaintiffs assert that, even if the limitation of liability clause is binding, it only applies to part of the work performed. Specifically, Plaintiffs argue that the project was

---

[3] The parties agreed in mediation to dispense with arguments 2, 3, and 4 for the purposes of deciding the competing Motions for Summary Judgment (February 8, 2012 Hearing at 9:09:00–9:12:10). The narrowed issues are discussed below.

6

"contractually" divided into two phases, the "entitlement phase" and the "contract document phase" (docket no. 156, at 3). According to Plaintiffs, the parties understood that Nadel would perform work on the entitlement phase pursuant to the Second Letter Agreement, but any additional work would be performed under a future written agreement (*id.* at 5). Plaintiffs argue that the Second Letter Agreement covers only the entitlement phase, and thus, even if the limitation of liability clause applies, it must apply only to work performed during that phase (*id.* at 3–5).

### PARTIES' CONTENTIONS AT THE HEARING

At the hearing on February 8, 2012, the parties informed the Court that they attended mediation and narrowed the dispute to two issues: 1) whether the limitation of liability clause was agreed to by Boulder when Boulder signed the Second Letter Agreement and, therefore, whether it is enforceable; and 2) if so, whether, the limitation of liability clause applies to all services provided by Defendant (February 8, 2012 Hearing at 9:09:00–9:12:10). The parties' oral arguments on these two issues are summarized below.

### I. Enforceability of the Limitation of Liability Clause

On the first issue, Plaintiffs allege that there is a genuine issue of material fact as to the existence of an agreed-to limitation of liability clause because the parties dispute whether the Terms and Conditions were attached to the Second Letter Agreement (*id.* at 9:12:15–9:12:33). Plaintiffs stated at the February 8, 2012 hearing, however, that they will not "vehemently" argue the enforceability of the clause as a whole, but simply point to the Affidavit of Eric Rosenberg stating that he did not receive the Terms and Conditions (docket no. 144-1, at 2). Defendants maintain that the Terms and Conditions were attached and further argue that there is no material fact issue because the Terms and Conditions, even if not attached, are specifically referenced by

7

and incorporated into the signed Second Letter Agreement and therefore, are a binding part of the Agreement as a matter of law (*id*. at 9:21:09–9:22:55). Defendants also note that Rosenberg made notes on and initialed the Terms and Conditions attached to the First Letter Agreement. Rosenberg, they assert, therefore had the opportunity to review these Terms and Conditions at least once and should have been familiar with their contents prior to signing the Second Letter Agreement (*id*. at 9:18:00–9:21:10). Both parties agreed at the February 8, 2012 hearing that Rosenberg is a sophisticated business individual.

Defendants also argue that a party is presumed as a matter of law to have read, understood, and agreed to what he or she signed (*id*. at 9:26:30–9:26:50). They emphasize that Rosenberg signed immediately below a paragraph beginning with: "If you have any questions regarding the above or need further clarification, please do not hesitate to call our office." (February 8, 2012 Hearing at 9:18:00–9:19:30 (quoting docket no. 144-3, at 6)). Defendants state that no such call was received, and Plaintiffs do not appear to dispute this assertion. This sentence is immediately followed by the statement that the Terms and Conditions are "incorporated into and made part of" the Second Letter Agreement (docket no. 144-3, at 6).

## II. Scope of the Limitation of Liability Clause

On the second issue, Plaintiffs assert that even if there is an agreed-to limitation of liability clause, it applies to the "entitlement phase" only, and damages resulting from work in other phases are not limited (February 8, 2012 Hearing at 9:12:35–9:13:40; docket no. 156, at 3).[4] Plaintiffs argue that the project was divided into two phases, the "entitlement phase" and the "contract document phase," and that the Second Letter Agreement was intended only to govern

---

[4] Plaintiffs assert that Defendants are not entitled to Partial Summary Judgment on the second issue because there is no evidence showing how much of the damages are attributable to each part of the project. Because acceptance of Plaintiff's position that the scope was limited to the entitlement phase would negate granting partial summary judgment for Defendants, who request a finding that the damages are entirely capped at the amount of fees invoiced as a matter of law, it is not necessary to reach this aspect of Plaintiffs' argument.

8

the "entitlement phase" (docket no. 156, at 3). Plaintiffs urge that the "'Basic Contract' Services" (docket nos. 144-3, at 3; 149-2, at 4), that is, services beyond the entitlement phase, are discussed in the Second Letter Agreement purely for definitional reasons, to describe the differences between the two phases, not because the agreement was meant to govern that portion of the project (February 18, 2012 Hearing at 9:13:40–9:13:56). For this assertion, Plaintiffs rely primarily on the content and placement of the paragraph on page three of the Second Letter Agreement stating that once the parties were ready to proceed beyond the entitlement phase, they would prepare another contract (docket no. 144-3, at 3).

Plaintiffs contend that this wording makes it clear that the only work authorized by the Second Letter Agreement is that of the entitlement phase. They also assert that the final sentence of the paragraph stating that "[o]ur scope of work shall generally consist of the following services" prior to discussion of the Basic Contract Services makes it clear that the reference to the Basic Contract Services is merely an agreement to agree on the terms of that part of the project at a later time (February 8, 2012 Hearing, at 9:39:00–9:40:20). Plaintiffs emphasize that the placement of this paragraph between the discussion of the entitlement phase and the discussion of the Basic Contract Services is further evidence that the phases are distinct and that the Second Letter Agreement was meant only to govern the entitlement phase of the project (docket no. 156, at 3–5). Plaintiffs contend that the separate totals for estimated charges for Tasks 000–001 in the entitlement phase and Tasks 100–500 in the Basic Contract Services phase also reflects "a clear separation of work" between the phases (docket no. 156, at 7). Plaintiffs also asserted at the hearing, referring to the Affidavit of Eric Rosenberg, that the Basic Contract Services were completed "pursuant to . . . written work authorizations and emails" separate from

9

the Second Letter Agreement (docket no. 144-1, at 2).[5]

Plaintiffs first raised the argument regarding the scope of the limitation of liability clause in their Response to Defendants' Motion. Defendants did not file a reply to Plaintiffs' response, but addressed Plaintiffs' arguments regarding the scope of the clause at the February 8, 2012 hearing. Defendants deny that there is any question of fact regarding the second issue (February 8, 2012 Hearing at 9:30:39–9:30:49), but do not address why, as a matter of law, the Second Letter Agreement and limitation of liability clause must be applicable to the entire project. They acknowledge that the Second Letter Agreement contains the paragraph stating that when the parties are ready to proceed with the Basic Contract Services, they will draw up another agreement that comports with the standard architect-owner agreement (docket no. 144-3, at 3). Defendants assert, however, that this paragraph refers to the Standard Form Agreement that the parties previously agreed was never fully executed and is not binding for the purpose of resolving the Motions. They argue that while the existence of this provision could lead to the conclusion that the parties contemplated entering into another binding agreement, they never actually did so (February 8, 2012 Hearing at 9:30:50–9:33:52).

In response to Plaintiff's assertion that work beyond the entitlement phase was completed pursuant to separate work authorizations, Defendants urge that these are not separate contracts as contemplated by the statement in the Second Letter Agreement, but are simply documents to memorialize the authorization of additional services so that Nadel would have the right to be paid for its work. The authorizations, Defendants assert, are for work beyond the basic services referred to in the Second Letter Agreement but still fall under the purview of the Second Letter

---

[5] Defendants dispute the admissibility of emails or work authorizations not included in summary judgment evidence, particularly any email discussions. The Parties agree that any work authorizations included in Nadel's Proof of Claim are admissible for the purposes of the competing Motions. Regarding any additional communications, the Court does not find them to be important to consideration of the Motions and thus will not address their admissibility.

10

Agreement. Defendants argue that because the Standard Form Agreement was the only possible additional agreement contemplated by the Second Letter Agreement and was never executed, the only agreement governing the project is the Second Letter Agreement.

Defendants contend that the Second Letter Agreement, taken as a whole, contemplates all phases of the project, describing and providing monetary estimates for all phases of services. Defendants also reject Plaintiffs' contention that the Second Letter Agreement's reference to phases beyond the entitlement phase is purely definitional, arguing that "contract document" is a term of art in the industry and in construction law that encompasses the plans, specifications, and all documents used for bidding and construction of the entire project (*id*. at 9:34:24–9:35:16). Defendants assert that the Second Letter Agreement covers the entitlement and contract document phases and that those two "phases" encompass the entire project (*id*. at 9:35:17–9:35:30).

## MOTION FOR SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). To the extent facts are undisputed, a court may resolve a case as a matter of law. **Celotex Corp.**, 477 U.S. at 323; **Blackwell v. Barton**, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." **James v. Sadler**, 909 F.2d 834, 837 (5th Cir. 1990) (citing

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of a quality sufficient so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007). "'On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

## ANALYSIS

In their Motion for Partial Summary Judgment, Plaintiffs request a finding that the limitation of liability clause contained in the Terms and Conditions is not an enforceable part of the Second Letter Agreement (docket no. 144, at 2). Defendants, in their competing Motion for Partial Summary Judgment, request the opposite finding that the limitation of liability clause is enforceable as a matter of law and that, accordingly, any damages should be capped at the fees invoiced, at $295,508.30 (docket nos. 149, 150). In their Response, Plaintiffs argue that, even if there is an enforceable limitation of liability clause, the clause is only applicable to a small part of the services performed by Nadel- those performed during the "entitlement phase." (Docket no.

156). In essence, as previously mentioned, the parties have narrowed their dispute to two issues: 1) whether the limitation of liability clause is enforceable; and 2) if so, whether, the limitation of liability clause applies to all services performed by Nadel. The Court will address each of these issues in turn.[6]

### I. Enforceability of the Limitation of Liability Clause

Plaintiffs assert that there is a genuine issue of material fact as to the existence of an agreed-to limitation of liability clause because the parties dispute whether the Terms and Conditions were attached to the Second Letter Agreement. Defendants counter that there is no genuine issue of material fact because this issue can be resolved as a matter of law. For the reasons stated below, the Court agrees with Defendants that this issue can be resolved as a matter of law and, accordingly, finds that Plaintiffs' Motion for Partial Summary Judgment, requesting a finding that the limitation of liability clause is not enforceable (docket no. 144), should be DENIED.

Under Texas law, "'[i]t is uniformly held that an unsigned paper may be incorporated by reference by the person sought to be charged.'" *Preston Exploration Co., L.P. v. GSF, L.L.C.*, No. 10-20599, 2012 WL 300414, at *4, 2012 U.S. App. LEXIS 1873 (5th Cir. Feb. 1, 2012) (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)) (holding that there was a valid contract and that, because it specifically referenced certain exhibits, those exhibits were part of the entire contract for the purpose of determining compliance with the statute of frauds). "[A] separate document will become part of the contract where the contract 'makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.'"

---

[6] The parties agreed at the hearing, on February 8, 2012, that the Court need not conduct a choice-of-law analysis as to these two issues because the relevant case law is the same Texas as in Nevada. The Court agrees that the relevant contract principals are, in fact, commonly applied in both states. Accordingly, the Court will cite primarily to Texas law, with a footnote reference to demonstrate the similarity in Nevada law, where applicable.

*One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 268 (5th Cir. 2011) (quoting 11 WILLISTON ON CONTRACTS § 30:25 (4th ed. 1999)) (describing the general contract law doctrine of incorporation by reference before discussing its application to maritime law).[7]

For example, in *In re Bank One, N.A.*, 216 S.W.3d. 825 (Tex. 2007), cited by Defendants in their Motion, a bank customer challenged the enforceability of an arbitration agreement that was referenced in a signature card the customer signed. The customer argued that the agreement was not valid because it was not attached to the signature card and was not separately signed. *Id.* at 826. The Texas Supreme Court noted that the signature card contained the following language: "Customer acknowledges receipt of the Bank's Account Rules and Regulations including all applicable inserts and agrees to be bound by the agreements and terms contained therein." *Id.* Accordingly, the court held that the signature card incorporated the arbitration agreement by reference, thereby rendering it valid and enforceable. *Id.*

In addition, as Defendants point out, a party is presumed to know the contents of what it signs, including items incorporated by reference. *S. Nat'l Bank v. Crateo, Inc.*, 458 F.2d 688, 692 (5th Cir. 1972) (citing *Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962)).[8] For example, in *Southern National Bank*, a contract specifically referencing attached documents was forwarded to the defendant for signing but did not include the attachments. The defendant signed the contract without inquiring about the missing attachments and later challenged the enforceability of one of the documents. *Id*. at 691. The Fifth Circuit held that the contract, including the

---

[7] Similarly, under Nevada law, the "general rule" is that that "writings which are made part of the contract by annexation or reference will be so construed . . . ." *Scaffidi v. United Nissan*, 425 F. Supp. 2d 1159, 1167 (D. Nev. 2005) (quoting *Lincoln Welding Works v. Ramirez*, 98 P.2d 381, 383 (Nev. 1982)) (internal citations and quotations omitted).

[8] Similarly, in Nevada, a party "'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them." *In re Schwalb*, 347 B.R. 726, 743 (Bankr. D. Nev. 2006) (quoting *Campanelli v. Conservas Altamira, S.A.*, 477 P.2d 870, 872 (Nev. 1970)) (internal citations and quotations omitted) (finding that debtor's alleged ignorance of the import of a pawn ticket's terms did not render it invalid as security agreement).

referenced documents, was enforceable and that the defendant could not avoid liability by asserting the defense of mistake. *Id.* at 692-93.

Similarly, in *In re International Profit Associates, Inc.*, 286 S.W.3d 921 (Tex. 2009), the Texas Supreme Court held that a forum selection clause was enforceable, despite the fact that it appeared on a page that the plaintiff alleged was missing from the version presented to him by the defendants because a "party who signs a document is presumed to know its contents." *Id.* at 923 (quoting *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 232 (Tex. 2008)). The clause appeared on the first page of the document, which the plaintiff claimed he never received. *Id.* The court noted evidence that the plaintiff knew or should have known of the clause even if it was missing, including the fact that the pages were numbered "2 of 4," "3 of 4," etcetera, and that the clause above the plaintiff's signature read, "This document, 4 pages in total." *Id.* at 921–923.

In this case, Plaintiffs signed the Second Letter Agreement, which explicitly referenced the Terms and Conditions as being "incorporated into and made part of" the Agreement (docket nos. 144-3, at 6; 149-2, at 7). Thus, even if the Terms and Conditions were not attached as Plaintiffs allege, the Second Letter Agreement incorporated the Terms and Conditions by reference, similar to the arbitration agreement in *In re Bank One*. Texas case law is clear that when one document is explicitly referred to and incorporated by an agreement, that document is an enforceable part of the agreement. The Terms and Conditions are, therefore, an enforceable part of the Second Letter Agreement as a matter of law. In addition, Rosenberg signed immediately below a paragraph inviting him to call Defendants with any questions regarding the Second Letter Agreement; yet Rosenberg did not exercise this option. Like in *Southern National Bank* and *In re International Profit Associates*, Plaintiffs in this case "knew or should have known" of the Terms and Conditions, and their failure to inquire about the allegedly

15

missing attachment does not provide them with a defense.

In sum, notwithstanding the immaterial factual dispute of whether the Terms and Conditions were attached to the Second Letter Agreement, the Court finds as a matter of law that the Terms and Conditions were expressly incorporated by reference and are, therefore, an enforceable part of the contract. The Court further finds as a matter of law that when Rosenberg signed the Second Letter Agreement he was presumed to know the contents of the Agreement, including the limitation of liability clause contained within the Terms and Conditions. Accordingly, the Court finds that Plaintiffs' Motion for Partial Summary Judgment, requesting a finding that the limited liability clause contained within the Terms and Conditions is not enforceable as a matter of law (docket no. 144), should be DENIED.

## II. Scope of the Limitation of Liability Clause

In Defendants' competing Motion for Partial Summary Judgment, they assert that any damages owed to Plaintiffs should be capped at $295,508.30, the amount invoiced by Nadel for services performed under the Second Letter Agreement, pursuant to the language of the limitation of liability clause (docket nos. 149, 150). In their Response, Plaintiffs argue that, even if there is an enforceable limitation of liability clause, the Second Letter Agreement only governs services performed by Nadel during the "entitlement phase" of the project and, therefore, the limitation of liability clause only applies to limit damages relating to services performed within the "entitlement phase" (docket no. 156).

For the reasons stated below, the Court finds that the ambiguous scope of the Agreement, and thus that of the limitation of liability clause, constitutes a genuine issue of material fact which cannot be resolved on a motion for summary judgment. Accordingly, the Court finds that Defendants' Motion for Partial Summary Judgment, should be GRANTED IN PART in so far as

it requests a finding that the limitation of liability clause is enforceable, but should be DENIED IN PART in so far as it requests a finding that the damages should be capped at the amount of fees invoiced.

"Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide . . . ." ***Gonzalez v. Denning***, 394 F.3d 388, 392 (5th Cir. 2004). Once a court finds an agreement to be ambiguous, however, "summary judgment is improper because interpretation of the agreement is a fact question . . . ." ***Childers v. Pumping Sys., Inc.***, 968 F.2d 565, 569 (5th Cir. 1992) (denying summary judgment on the payment of royalties found to be owed because the contract was ambiguous as to the formula for calculating the royalty amount). "[A] contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term." ***Gonzalez***, 394 F.3d at 392 (quoting ***Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines***, 278 F.3d 494, 497 (5th Cir. 2002)). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous," but if there is more than one reasonable interpretation of the contract, then it is ambiguous. *Id.* (quoting ***Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.***, 907 S.W.2d 517, 520 (Tex. 1995)).[9]

In this case, Plaintiffs argue, in opposition to Defendants' Motion, that the Second Letter Agreement covers only the entitlement phase and that the parties understood that any additional work would be performed by Nadel under a future written agreement (*id.* at 5). The Court is unable to confirm or deny Plaintiff's proposed interpretation of the Agreement as a matter of law, however, due to the conflicting language in the Agreement, which allows for more than one reasonable interpretation of the scope of the contract.

For example, the last sentence of the first paragraph on page one of the Second Letter

---

[9] Similarly, in Nevada, "[s]ummary judgment is appropriate when a contract is clear and unambiguous, meaning that the contract is not reasonably susceptible to more than one interpretation." ***Univ. of Nev., Reno v. Stacey***, 997 P.2d 812, 814 (Nev. 2000).

17

Agreement includes the statement, "we are hereby submitting our proposal for Architectural Services for the entitlement phase and the contract document phase" (docket no. 144-3, at 1). It is reasonable to interpret this as meaning that the Second Letter Agreement applies to both the "entitlement phase" and the "contract document," as Defendants urge. On the other hand, the paragraph on page three of the Second Letter Agreement, beginning with "[a]t such time that we are authorized to proceed beyond the entitlement phase, we shall prepare a contract for basic services," could reasonably be interpreted as meaning that the Second Letter Agreement does not apply beyond the entitlement phase, and that a new agreement is necessary to govern additional services (docket no. 144-3, at 3), as Plaintiffs contend. The statement on the first page and the paragraph on the third page conflict as to the scope of the project governed by the Agreement, and both of the interpretations are reasonable.

Similar to *Childers*, while this Court has determined that the limitation of liability clause is enforceable and the damages must be limited to some degree as a matter of law, there is an ambiguity as to the scope of the contract and, as a result, an ambiguity as to the precise amount at which the damages should be capped. Moreover, the parties' intent regarding the scope of the contract is a question of fact, and extrinsic evidence may be necessary for each party to demonstrate that their interpretation best reflects that intent. Because the contract is ambiguous and there is a question of fact as to the interpretation of the contract, summary judgment is improper.

In sum, the Court finds that the limitation of liability clause is incorporated by reference into the Second Letter Agreement as a matter of law; however, the scope of the Second Letter Agreement, including the scope of the limitation of liability clause and the dollar amount at which damages are capped, cannot be decided as a matter of law. Accordingly, the Court finds

that Defendants' Motion for Partial Summary Judgment, should be GRANTED IN PART in so far as it requests a finding that the limitation of liability clause is enforceable, but should be DENIED IN PART in so far as it requests a finding that the damages should be capped at $295,508.30, the amount of fees invoiced.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' Motion for Partial Summary Judgment filed December 27, 2011 (docket no. 144) should be DENIED, and further finds that Defendants' Motion for Partial Summary Judgment filed January 3, 2012 (docket no. 149) should be GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

# # #